UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

United States of America,

    Plaintiff,

v.                              **MEMORANDUM OF LAW & ORDER**
                                  Crim. No. 15-MJ-312(6)

Guled Ali Omar,

    Defendant.

_____

    John Docherty and Andrew Winter, Assistant United States Attorneys, Counsel for Plaintiff.

    Glenn P. Bruder, Mitchell, Bruder & Johnson, Counsel for Defendant.

_____

**I.    Introduction**

This matter is before the Court on the Defendant's Motion to Review the Detention Order of Magistrate Judge Becky Thorson dated May 1, 2015 [Doc. No. 27]. The Court has conducted a de novo review of the proceedings before Magistrate Judge Thorson. The Court has also reviewed the parties' submissions on appeal and heard arguments of counsel.

**II.    Standard**

A defendant may be detained pending trial if the Court finds there is no

1

"condition or combination of conditions . . . [that] will reasonably assure the appearance of such person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e)(1). Because the Defendant has been charged under 18 U.S.C. § 2339B, and because the Magistrate Judge found probable cause exists to support these charges, there is a rebuttable presumption that no condition or combination of conditions will reasonably assure the appearance of the Defendant and the safety of the community. 18 U.S.C. § 3142 (e)(3)(C) (18 U.S.C. § 2339B is a crime listed in 18 U.S.C. § 2332b(g)(5)).

The existence of this presumption places upon the Defendant the "limited burden of production - not a burden of persuasion - to rebut that presumption by coming forward with evidence he does not pose a danger to the community or a risk of flight." United States v. Abad, 350 F.3d 793, 797 (8th Cir. 2003)(quoting United States v. Mercedes, 254 F.3d 433, 436 (2d Cir. 2001)).

Detention is appropriate where the government proves by clear and convincing evidence that the Defendant is a danger to others or to the community, or when the government proves by a preponderance of the evidence that the Defendant is a risk of flight, and that in either case, there are no conditions or combination of conditions that will assure the safety of the

community or the Defendant's appearance at future court proceedings.

In making this determination, the Court must take into account the following factors:

(1) The nature and circumstances of the offense charged, including the fact that the crime charged is an offense listed in section 2332b(g)(5)(B) for which a maximum term of imprisonment of 10 years or more is prescribed;

(2) the weight of the evidence against the person;

(3) the history and characteristics of the person, including–

(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
(B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

### A. Offense Charged and Weight of the Evidence

The Defendant has been charged in the Complaint with Conspiracy to Provide Material Support to a Designated Terrorist Organization and Attempt to

Provide Material Support to a Designated Foreign Terrorist Organization, in violation of 18 U.S.C. § 2339B(a)(1) and § 2.  The offenses charged in this case are serious felonies that carry a statutory maximum sentence of 15 years.

As set forth in the sworn Complaint, and as confirmed by the testimony of Special Agent Samit, in May 2014, Abdullahi Yusuf was stopped at the MSP airport as he was attempting to fly to Istanbul, Turkey.  The government asserts that Yusuf's ultimate destination was Syria, so he could join ISIL, a foreign terrorist organization.  In response to Yusuf's failed attempt to travel to Turkey, it is believed that another individual, Y.J., the Defendant and a confidential human source ("CHS")  later tried to drive to San Diego, so they could travel to Syria from Mexico.  When this plan was frustrated, Y.J. took a bus to JFK airport and was able to reach Turkey from there.

On November 6, 2014, the Defendant was stopped at MSP trying to fly to San Diego.  He had a passport, but no checked luggage.  Later, in a conversation with the CHS, the Defendant stated that immediately after he was stopped, he called co-defendant Hanad Musse to inform him that he had been stopped and not allowed to travel to San Diego.

Thereafter, co-defendants Musse and Zacharia Abdurahman and two

others took a Greyhound bus from Minnesota to New York. Once in New York, Musse and Abdurahman booked airline tickets to Athens, Greece. Neither one was allowed to board the plane, however. During questioning by law enforcement, Musse said he was traveling alone to Greece to "chill" and that he did not know anyone in Greece, nor had he made any reservations in Greece. Abdurahman also stated that he was traveling alone to Greece, but then later changed his story, stating that he was traveling with Musse. He also volunteered that if he was really going to Syria to join ISIS, he would have traveled to Istanbul.

    The Defendant was also part of a group that in February 2015, was attempting to travel to southern California to collect forged passports and then cross into Mexico, and from there, travel to Syria. The CHS learned from members of the conspiracy that others were in direct contact with Abdi Nur, a man from Minnesota who had flown to Istanbul on May 29, 2014 and whose social media postings and interactions with "Witness 1", show that he has entered Syria and joined ISIL. The plan to obtain false passports was derailed when Abdi Nur was unable to arrange for the passports from his source. When the plan fell through, the CHS told the Defendant that he may be able to secure a contact in

California for forged travel documents. When such a contact was made, the Defendant notified others in the conspiracy of the existence of a new source for forged travel documents.

Later, on March 28, 2015, the Defendant told the CHS that he wished to delay his own travel to Syria, because he did not want to travel with his co-defendants because he believed to do so would ensure failure.

The Defendant argues that there is no question that the charged offenses are serious, but that the weight of the evidence against the Defendant is hotly contested. While the government argues that the Defendant made repeated efforts to leave the country to join ISIL, the Defendant asserts there is no evidence that he purchased tickets to anywhere outside the United States. With regard to the trip to San Diego, the Defendant notes that he purchased round trip tickets, had reservations there and provided law enforcement the names of people he intended to visit. The Defendant notes that the government never bothered to interview those individuals to determine whether the Defendant's statements were true. Further, in one taped conversation with the CHS, the Defendant stated that he had no intention of leaving the United States with his co-defendants. In addition, the Defendant rebuffed the CHS's efforts to solicit his

participation in a scheme to obtain false passports.

As set forth above, the weight of the evidence supports a finding of detention. Not only did the Defendant attempt to leave on two occasions, he also participated in attempts to obtain forged travel documents. The evidence of concerning the Defendant's conversations with the CHS further weigh in favor of detention. In one conversation with the CHS, the Defendant described the steps he took to avoid law enforcement. The Defendant also told the CHS that the statements he made to law enforcement concerning a hotel reservation in San Diego, and the friends he was planning to visit were fabrications.

### B. Harm to the Community/Risk of Flight

The Defendant argues that had he been charged with any other crime, he would have been released pending trial. He asserts there are conditions of release, such as electronic monitoring, regular visits with pretrial services or residence at a halfway house, that will assure his appearance at future proceedings and the safety of the community. He asserts he could continue to live with his mother and sisters, and that his sister would provide him transportation to any required meetings with pretrial services. He further offers residing in a halfway house as another option.

The Court finds that the Defendant poses a risk of harm to the community. He is charged with attempting to join the most violent terrorist organization, ISIL. There is harm to the immediate Minnesota community, as the record demonstrates when young men successfully travel and join a terrorist organization, they tend to reach back to Minnesota through social media to recruit other young men.

The Court also finds there would be harm to the wider community - that of civilians in the Middle East - if the Defendant succeeds in his ambition to travel to Syria and join ISIL.

Finally, there is evidence in the record which indicates the Defendant poses a flight risk. Part of the offense conduct in this case involves the Defendant's attempt to travel overseas to join a terrorist organization, and his attempt to obtain forged travel documents to achieve his goal.

### C.    History and Characteristics of the Defendant

The Defendant has lived most of his life in the United States. He is now a citizen of the United States. The Defendant graduated from high school in Minneapolis, and attends a local college. He also works part time to fund his education. He has no criminal history. The Defendant further established that he

has longstanding ties to the community, and lives with his mother and siblings.

## III. Conclusion

Based on the file, record and proceedings herein, the Court finds that the Defendant has not presented sufficient evidence to rebut the presumption in favor of detention. The Court further finds that there is clear and convincing evidence that no condition or combination of conditions will reasonably assure the safety of the community if the Defendant is released, and that a preponderance of the evidence demonstrates that the Defendant is a flight risk.

IT IS HEREBY ORDERED that the Defendant's Motion to Review the Detention Order of Magistrate Judge Thorson [Doc. No. 51] is **DENIED**. The Defendant shall remain in the custody of the U.S. Marshal pending further Order of this Court.

Date: May 15, 2015

                                              s/ Michael J. Davis
                                              Michael J. Davis
                                              Chief Judge
                                              United States District Court